UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| JIMETTA YVONEE RILEY, | ) CV 08-8010-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM DECISION |
| | ) |
| v. | ) |
| | ) |
| MICHAEL ASTRUE, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## I. PROCEEDINGS

Plaintiff Jimetta Yvonne Riley filed a Complaint on December 8, 2008 seeking review of the Decision of the Commissioner of the Social Security Administration denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The parties consented to proceed before the United States Magistrate Judge. Plaintiff submitted a supplemental certified administrative

record on May 19, 2009, which included several pages of medical records that were allegedly omitted from the administrative record supplied to the Appeals Council. Plaintiff submitted a request to augment the record on July 13, 2009, however the supplementary pages provided by the plaintiff were already contained in the supplemental certified administrative record (see Administrative Record [AR] 242-44). Plaintiff filed a brief in support of the Complaint on July 13, 2009 and moved for summary judgment.   Defendant filed an opposition brief on August 12, 2009, including a cross-motion for summary judgment. Plaintiff filed a reply on August 20, 2009.

## II. **BACKGROUND**

On August 28, 2006, plaintiff filed an application for DIB and SSI alleging an inability to work commencing March 1, 2003.[1] The Social Security Administration denied plaintiff's original application initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which occurred on October 15, 2007.

In a written opinion issued on November 30, 2007, the ALJ found that plaintiff suffered several severe impairments, including obesity, status post multiple surgeries to the cervical spine, arthritis, and asthma, AR 21, but that these impairments taken together did not equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff retained a residual functional capacity (RFC) permitting light work with an additional nonexertional limitation due to asthma. (AR 22).

In articulating plaintiff's RFC, the ALJ addressed plaintiff's subjective claims of severe pain in her lower back, knees, left shoulder, and hands, which she alleged caused her constant pain, required her to constantly alternate between sitting and standing positions, and prevented her from typing for more than 20

---

[1] Plaintiff filed a prior claim for DIB on August 10, 1989, which was denied. (AR 89).

minutes at a time, AR 29-35. The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce her alleged pain symptoms, but that her testimony concerning the intensity, persistence, and limiting effects of her pain symptoms was not entirely credible. (AR 22). The ALJ concluded that plaintiff retained the ability to perform past relevant work as a medical biller, administrative assistant, assembler, or contractor. Plaintiff filed a request for Appeals Council review on January 18, 2008, submitting additional medical records for Appeals Council consideration, which were added to the Administrative Record. The Appeals Council declined review on October 6, 2008.

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for discounting her excess pain testimony, and that the ALJ did not properly articulate plaintiff's RFC. For the reasons discussed below, this Court finds that plaintiff's claims have merit and remands for further proceedings.

### III. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine if: (1) the ALJ's findings are supported by substantial evidence; and (2) the ALJ used proper legal standards. Delorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but "less than a preponderance," Desroisiers v. Secretary of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). This court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, Torske v. Weinberger, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

It is the duty of this court to review the record as a whole and to consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). The court is required to uphold the decision of the ALJ where evidence is susceptible to more than one rational interpretation. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984). The court has the authority to affirm, modify, or reverse the ALJ's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

## IV. **DISCUSSION**

An ALJ is not required to accept every allegation of disabling pain, or else disability benefits would be available for the asking. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, in the absence of evidence that a plaintiff is malingering, the ALJ must provide clear and convincing reasons to support an adverse credibility determination. Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009); Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995).

To determine whether plaintiff's testimony regarding severity of symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

To constitute a basis for finding allegations of disabling pain not credible, the claimant's daily activities must be rigorous enough to be a fair proxy for the demands of work. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). While

the ALJ may reject a plaintiff's symptom testimony if plaintiff is able to spend a substantial part of her day performing household chores or other activities transferable to a work environment, the claimant need not be utterly incapacitated to be eligible for benefits. Smolen, supra; Gallant, supra (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes).

Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in credibility analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). However, once plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical findings. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (emphasis added). The effectiveness of pain medication, including adverse side-effects, is a factor the ALJ may consider in evaluating allegations of disabling pain. Id. Conservative or infrequent treatment may be used by the ALJ to refute allegations of disabling pain. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). However, a plaintiff's failure to seek adequate treatment is an acceptable reason to discount pain testimony only if it is unexplained or inadequately explained. SSR 96-7p. Social Security Ruling 96-7p provides that, "an adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue

1 treatment in a consistent manner." Id. The inability to afford treatment is a valid
2 explanation for not obtaining it. Regennitter v. Comm'r, 166 F.3d 1294, 1297
3 (9th Cir. 1999).

## A. THE ALJ FAILED TO PROVIDE CLEAR AND CONVINCING REASONS FOR DISCOUNTING PLAINTIFF'S EXCESS PAIN TESTIMONY

Since the record presents no indications of malingering by plaintiff, the ALJ was required to provide clear and convincing reasons for finding plaintiff's pain testimony not entirely credible. The ALJ failed to provide clear and convincing reasons and therefore committed error.

Plaintiff's Daily Activities

The ALJ reasoned that the degree of pain plaintiff alleged was inconsistent with her ability to perform certain daily activities, including preparing meals, doing simple household tasks, and walking up to three blocks despite using a cane. (AR 22). The ALJ also asserted that plaintiff gave contradictory statements regarding how much weight she could lift. Id. To support these conclusions, the ALJ cited plaintiff's testimony at the administrative hearing and her written responses on an Exertional Daily Activities Questionnaire ("the questionnaire") completed prior to the hearing. (AR 22, 28-35, 104-06).

The ALJ presented this evidence perfunctorily, selectively, and out of context. The ALJ stated that plaintiff can "prepare meals." However, in response to a direct question posed by the ALJ concerning plaintiff's ability to cook and do household chores, plaintiff testified that, "before my husband goes to work he fixes me something to eat and fix [sic] whatever I need until he gets home." (AR 30). Plaintiff then testified how pain symptoms in her legs and back, which require her to constantly alternate between standing and sitting positions, make it

difficult for her to cook, before concluding, ". . . not really. It's very difficult." In response to a question about what activities plaintiff engages in on an average day, plaintiff wrote, "All I can do is get me something to eat because I can't stand long or will fall if stand to [sic] long." (AR 104). Here, plaintiff admitted retrieving and eating food, not "preparing" meals. Even construing plaintiff's testimony to mean she can occasionally cook for short periods despite pain, the record does not clearly support a finding that this limited functional ability is transferable to a work environment.

Nor does the record support the ALJ's assertion that plaintiff can perform simple household tasks. When asked what she was able to do in a regular day, plaintiff testified, "Not much, your Honor." (AR 29). When asked whether she was able to do any cooking or cleaning around the house, plaintiff responded by discussing how her husband prepares meals but did not mention any household tasks. (AR 30). The only other household activities plaintiff discussed were watching TV, listening to the radio, and occasionally driving, and plaintiff testified that her symptoms make even these sedentary tasks difficult. Id. In the questionnaire, plaintiff expressly denied being able to do cleaning chores, stating in one answer, "I can't hardly walk, I can't even clean the house because of the pain." (AR 104). In response to a question about plaintiff's ability to do household cleaning, plaintiff wrote, "Can't do anything because of pain and if I don't take medicine I can't move or do anything." (AR 105). Based on the evidence cited by the ALJ, it is difficult to identify which household tasks plaintiff is capable of performing.

The ALJ claimed that plaintiff's statements are in conflict because she can walk up to three blocks despite using a cane, experiencing shortness of breath from asthma, and suffering leg and shoulder pain. (AR 22). However, the ALJ's characterization omits crucial detail from plaintiff's questionnaire response, in which she wrote, "I use a cane and walk to store [sic]. It takes me at least 1 hour

to walk 3 blocks to the store, and I have to get a ride back because of pain after walking. I can't do anything but rest, can't cook, stand etc. Must rest for at least 2 hrs." (AR 104). The ALJ selectively considered this statement as evidence of plaintiff's "stamina." In context, plaintiff's account of her limited ability to walk is consistent with her account of disabling pain and therefore does not clearly support the ALJ's adverse credibility determination. Considered together, these daily activities are not sufficiently rigorous or substantial to be a fair proxy for the demands of an average work day.

The ALJ also asserted that plaintiff gave inconsistent statements regarding her lifting capacity. Plaintiff testified that she could lift up to fifteen pounds, although she previously wrote on the questionnaire that she could lift no more than five pounds. (AR 30, 105). However, considering these statements in context indicates that the ALJ selectively presented this evidence. At the hearing the ALJ asked plaintiff how much she could pick up and carry, to which she answered, "Maybe about 10, 15 pounds. Very little." (AR 30). On the questionnaire, plaintiff wrote that she can lift, "Nothing over 5 lbs or it hurts to [sic] bad - in back lower [sic]." (AR 105). Contrary to the ALJ's contention, these two statements are not inconsistent. Plaintiff's questionnaire response indicates that lifting more than five pounds <u>triggers pain in her lower back</u>, not that she is physically incapable of lifting more than five pounds. At the hearing, the ALJ asked plaintiff how much she could lift, not how much she could lift without pain. Further, a discrepancy of five to ten pounds is insufficient to conclude that plaintiffs' two statements were materially inconsistent, given that both were delivered in rough, approximate terms accompanied by qualifiers.

The evidence cited by the ALJ regarding plaintiff's daily activities, when considered in context, does not materially conflict with plaintiff's excess pain testimony. Therefore, with respect to this evidence, the ALJ did not provide clear and convincing reasons supporting an adverse credibility determination.

8

Medical Record

The ALJ found that the medical record did not entirely support plaintiff's complaints of severe arthritic pain, restricted back and joint functions, or severe asthma. The ALJ observed that: most of plaintiff's visits to the medical clinic, El Projecto del Barrio ("the clinic"), have been for medication refills; plaintiff's asthma was easily controlled with medication, with only occasional reports of shortness of breath; and no radiographs (x-rays) were provided to show joint degeneration. (AR 22). In reaching these factual conclusions, the ALJ overlooked or failed to credit substantial medical evidence.

1. Evidence of Joint Degeneration

The ALJ initially acknowledged that plaintiff underwent multiple spinal surgeries in the past, AR 21, a fact that is not mentioned in the ALJ's credibility analysis, AR 22-23. The ALJ credited the medical opinion of consultative examiner Dr. Lim, which included medical findings supporting plaintiff's pain testimony.[2] Specifically, the ALJ summarized portions of Dr. Lim's evaluation, noting that, "[c]omplaints of back pain were supported by paravertebral tenderness and decreased ranges of flexion, but there were no signs of radiculopathy. Range of motion of the left shoulder, ankles, and left knee were painful and right knee motions were mildly decreased. . . . Gait was slow and painful . . . ." (AR 23). Although Dr. Lim opined that plaintiff was physically capable of performing light work, AR 189, the substance of Dr. Lim's evaluation does not clearly contradict plaintiff's pain testimony.

Further, the ALJ erroneously concluded that plaintiff provided no x-ray evidence of joint degeneration. The ALJ stated, "There are no x-rays in the file to show degenerative changes in the joints or in the cervical and lumbar spines."

---

[2] The ALJ also rejected the medical opinion of Dr. Morguars, one of plaintiff's treating physicians. (AR 23). However, on appeal plaintiff does not object to this part of the ALJ's Decision.

(AR 21). Yet the record contains a medical report regarding an x-ray taken of plaintiff's lumbar spine, ordered by Dr. Lim and dated December 13, 2006. (AR 190). This report indicates that plaintiff's lumber spine showed "marked disc space narrowing at L5-S1. There are small osteophytes present. The apophyseal joints are narrowed and sclerotic." The report concluded that plaintiff suffered "[m]oderate degenerative disease at L5-S1." Id. The ALJ simply overlooked this x-ray report. In addition, subsequent to the ALJ hearing, plaintiff supplemented the record with an x-ray of her right knee, which showed mild to moderate osteoarthritis. (AR 243).

With respect to evidence of joint degeneration, the medical evidence is not incongruous with plaintiff's pain testimony. Since the ALJ may not discount plaintiff's credibility merely on the basis that the medical evidence does not support the degree of pain alleged by plaintiff, Bunnel, supra, this evidence does not provide clear and convincing reasons to discount plaintiff's pain testimony.

2. Conservative Treatment

The ALJ made several factual observations that were presumably intended to support a finding that plaintiff received only conservative, infrequent medical care. The ALJ's reasoning, while not groundless, is insufficient to find plaintiff's pain testimony not credible under a 'clear and convincing' standard.

While most of plaintiff's visits to the clinic included requests to refill plaintiff's asthma and pain medications, plaintiff also sought evaluation and treatment for her claimed medical conditions. (See AR 169, 170, 174, 176, 201, 202, 221). Even assuming that failure to seek medical treatment constituted valid support for the ALJ's adverse credibility determination, the ALJ erred by failing to question plaintiff about this issue during or after the hearing, denying plaintiff the opportunity to provide an explanation for any purported inadequacy in her course of medical treatment. See SSR 96-7p. The ALJ was aware that plaintiff

received medical care from a free clinic, AR 33, raising the possibility that plaintiff was unable to afford further treatment, but the ALJ did not address this fact as a possible explanation for plaintiff's purportedly inadequate pursuit of medical care. See id. (providing that the ALJ may not draw any inferences from a plaintiff's failure to pursue adequate medical treatment for pain, "without first considering any explanations that the individual may provide, or other information in the case record."); Regennitter, supra.

While the ALJ properly noted that pain medications relieved plaintiff's symptoms somewhat, the ALJ did not consider adverse side effects, even though plaintiff indicated that she experienced disorientation and drowsiness. (See AR 104, 106, 111). The fact that no doctor has recommended knee surgery or physical therapy provides some support for the ALJ's adverse credibility determination. However, the subsequently submitted x-ray of plaintiff's right knee demonstrates mild to moderate osteoarthritis, which supports plaintiff's credibility. (AR 243). The ALJ asserted that plaintiff's asthma was easily managed by medication and that there were only occasional reports of shortness of breath, AR 22, but did not mention that plaintiff has required emergency room treatment for her asthma symptoms. (See AR 170, 176).

In light of the record as a whole, and given material errors in the ALJ's analysis discussed above, this Court concludes that the ALJ's adverse credibility finding was not supported by clear and convincing reasons.

**B.   THE ALJ'S ERRONEOUS CREDIBILITY FINDING PRECLUDES REVIEW OF THE ALJ'S DISABILITY DETERMINATION**

1     In concluding that plaintiff retained the RFC to return to past relevant
2 work, the ALJ relied on the testimony of vocational expert ("VE") Dr. June
3 Hagen, AR 23, 35-38. The ALJ posed two hypotheticals to the VE, both of
4 which related to plaintiff's ability to perform past relevant work. (AR 36-37). In
5 the first hypothetical, the ALJ asked the VE to assume that plaintiff could
6 perform light work and was limited to frequent balancing, stooping, kneeling,
7 crouching, and crawling, with occasional climbing, and an additional
8 environmental limitation. The VE testified that, plaintiff could perform all past
9 relevant work, except for one position. The second hypothetical included an
10 additional limitation to only occasional use of handling and fingering. The VE
11 testified that under this further limitation, plaintiff could not perform any past
12 relevant work. Plaintiff's attorney then posed his own hypothetical, which
13 included plaintiff's pain-related symptoms. (AR 37-38). The VE testified that
14 plaintiff could not perform any past relevant work, given these symptoms.

15     Since the VE's testimony, upon which the ALJ relied, indicates that
16 plaintiff's pain-related symptoms could have precluded her from performing past
17 relevant work, the ALJ's improper credibility determination was material error.
18 Since a proper articulation of plaintiff's RFC is necessary to determine whether
19 plaintiff can perform past relevant work and, if necessary, whether plaintiff can
20 perform other jobs available in the national economy, this court is unable to
21 determine whether plaintiff is disabled within the meaning of the Social Security
22 Act. Remand is therefore warranted.

23     On appeal, plaintiff argues that the ALJ, in articulating plaintiff's RFC,
24 also failed to include limitations in plaintiff's ability to perform tasks requiring
25 pushing, pulling, and/or fingering. While these claimed limitations may be
26 considered in reassessing plaintiff's RFC on remand, this Court neither accepts
27 nor rejects plaintiff's contentions on this point.

28

**CONCLUSION AND ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed and remanded pursuant to Sentence 4 of 42 U.S.C. Section 405(g) for further proceedings in accordance with this decision.

DATED: April 9, 2010

/ S /

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE